**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5590-15T3

MARIO ALBERTO RECINOS,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE AND
FIREMEN'S RETIREMENT SYSTEM,

    Respondent-Respondent.

_____

Argued May 31, 2018 — Decided July 19, 2018

Before Judges Haas, Rothstadt, and Gooden
Brown.

On appeal from the Board of Trustees of the
Police and Firemen's Retirement System, PFRS
No. 3-10-42728.

John Vincent Saykanic argued the cause for
appellant.

Danielle P. Schimmel, Deputy Attorney General,
argued the cause for respondent (Gurbir S.
Grewal, Attorney General, attorney; Melissa H.
Raksa, Assistant Attorney General, of counsel;
Danielle P. Schimmel, on the brief).

PER CURIAM

In 2011, Mario Alberto Recinos retired from the Passaic County Sheriff's Department (PCSD) as a Detective Lieutenant, concluding a nearly twenty-nine year career in law enforcement. He received a special service retirement from the Police and Firemen's Retirement System (PFRS). After the required thirty-day break in service, he resumed employment with PCSD, ultimately holding a PFRS-eligible position without re-enrolling in PFRS.

On August 10, 2015, the Division of Pensions and Benefits (Division) cancelled his retirement pursuant to N.J.S.A. 43:16A-15.3, effective December 1, 2011, re-enrolled him as of that date in the PFRS as an active contributing member, and required him to repay all pension payments he received after December 1, 2011, and to pay back pension contributions on the salary he received from eligible employment. Recinos now appeals from the July 12, 2016 final agency decision of the Board of Trustees of the Police and Firemen's Retirement System (Board), affirming the Division's determination. We affirm substantially for the reasons expressed in the Board's comprehensive decision.

As background, a PFRS member cannot receive retirement benefits based on prior service if currently employed in another PFRS-eligible position. If a PFRS retiree accepts new employment in a PFRS-eligible position, his retirement benefits are cancelled

until he retires again, and he is reenrolled in the PFRS. In that regard, N.J.S.A. 43:16A-15.3(a) specifically provides:

> [I]f a former member of the retirement system who has been granted a retirement allowance for any cause other than disability, becomes employed again in a position which makes him eligible to be a member of the retirement system, his retirement allowance and the right to any death benefit as a result of his former membership, shall be canceled until he again retires.
>
> Such person shall be reenrolled in the retirement system and shall contribute thereto at a rate based on his age at the time of reenrollment. . . . Upon subsequent retirement of such member, his former retirement allowance shall be reinstated based on his former membership.

The Board approved Recinos' retirement application from PCSD, notifying him and his employer in a March 14, 2011 letter that "[i]f [he] return[ed] to public employment following [his] retirement, [he] must notify [the Division's] Office of Client Services immediately." Recinos began receiving his monthly retirement allowance of $8177.64 on July 1, 2011, representing the benefit for June 2011.

On July 25, 2011, Recinos was rehired by PCSD as a "Keyboarding Clerk 1," at an annual salary of $41,120, and held the position until November 30, 2011. On December 1, 2011, Recinos was appointed Director of the Bureau of Narcotics at an annual salary of $77,225. He held that position until February 2, 2014,

and on February 3, 2014, Recinos was appointed Undersheriff of PCSD at an annual salary of $90,000. Recinos never informed the Division of his post-retirement employment.

After receiving an anonymous tip, the Division's Pensions Fraud & Abuse Unit launched an investigation into Recinos' post-retirement employment. On August 10, 2015, citing N.J.S.A. 43:16A-15.3, N.J.S.A. 43:16A-3.1,[1] and N.J.S.A. 40A:9-119.2,[2] Investigator Mark Casey notified Recinos that his PFRS retirement benefits

---

[1] N.J.S.A. 43:16A-3.1 deems certain positions "with administrative or supervisory duties over policemen" as PFRS-eligible if a PFRS member occupies that position within six months of his or her prior service in a PFRS position.

[2] N.J.S.A. 40A:9-119.2 provides:

> The sheriff of any county may appoint any person who, at the time of his appointment, has: a. served for [ten] years or more as a law enforcement official, three years of which shall have been in a supervisory position that included responsibilities for narcotic investigation or control activities; and b. has been certified by the Police Training Commission [(PTC)] as having completed a police training course at an approved police training school, pursuant to [N.J.S.A. 52:17B-66 to -77.6], as director of the bureau of narcotics, to serve for a term of one year without having to take a civil service examination. The director of the bureau of narcotics shall have full police officer status, as is granted to other sheriff's officers.

would be suspended and that he was required to re-enroll in PFRS as of December 1, 2011, when he returned to employment as Director of Bureau of Narcotics, and to remain enrolled for the duration of his employment as Undersheriff. Casey's letter also required Recinos to repay the pension benefits he received from December 1, 2011 through August 1, 2015, totaling $359,816.16, and pay $30,901.81 in back pension contributions on the salary he received for his post-retirement Passaic County PFRS employment.

Recinos appealed the determination, and, on October 20, 2015, Kristin Bell, another Pensions Fraud & Abuse Unit investigator, sent him a revised determination. The revised determination relied on the same statutory citations, with the exception of N.J.S.A. 43:16A-3.1. Citing N.J.A.C. 17:4-6.8(a)(1),[3] Bell reached the same conclusion as the initial determination and required the same repayment of benefits and payment of back pension contributions.

Recinos appealed to the Board, and, on March 16, 2016, the Board issued its decision affirming Casey's and Bell's prior determinations. The Board specified that after he was appointed as Director of Bureau of Narcotics, based on the requirements of

---

[3]  N.J.A.C. 17:4-6.8(a)(1) provides that "[a] member . . . whose retirement has become effective pursuant to N.J.A.C. 17:4-6.2, is required to re-enroll in the [PFRS] pursuant to N.J.S.A. 43:16A-15.3, regardless of whether the member is over age [thirty-five], if . . . the member returns to the employment in a PFRS covered position."

N.J.S.A. 40A:9-119.2, Recinos was required to re-enroll in PFRS. The Board determined further that the position of Undersheriff was eligible for PFRS membership pursuant to N.J.S.A. 43:16A-15.3. The Board cancelled Recinos' retirement allowance, required his re-enrollment in PFRS as an active contributing member effective December 1, 2011, and ordered him to repay all pension benefits and pay all back pension contributions since December 1, 2011.

On May 4, 2016, Recinos requested that the Board reconsider its decision. In support of his request, he submitted the purported expert report of Charles S. Meyers, a consultant of the Vyanka Group, LLC. In the report, Meyers stated

> Recinos' title was changed [from Keyboarding Clerk 1] to the appointed position of Director, Bureau of Narcotics, a position established by [N.J.S.A. 40A:9-119.2] and covered . . . by a New Jersey State administered retirement system other than the PFRS. Recinos was already employed by the agency and his appointment to this new position was not a "re-employment" but rather an advance or promotion of an existing employee within the same employment unit.

Similarly, according to Meyers, on February 3, 2014, "Recinos was advanced/promoted to the position of Undersheriff." Meyers explained that:

> The advancement[s]/promotion[s] [were] allowed because Recinos' original re-employment was consistent with the rules in place at the time of his return to employment, the position[s] [were] covered by a New Jersey

State administered retirement system other than the PFRS, and Recinos had separated his original service more than 180 days prior to his appointment.

On July 12, 2016, the Board denied Recinos' request for an administrative hearing in the Office of Administrative Law (OAL) pursuant to N.J.A.C. 17:1-1.5, because there were no disputed questions of fact, and issued its Final Administrative Determination affirming the Division's August 10, 2015 decision. The Board rejected Meyers' report, finding the opinion "unpersuasive" and "entitled to no weight," and finding Meyers "unqualified." The Board noted that based on Recinos' submissions, "Meyers [was] the former Warden of the Passaic County Jail and [a] PFRS retiree," held various positions in the PCSD, and served as County Business Administrator in 2011 and 2012.

According to the Board, in his capacity as County Business Administrator, on December 12, 2011, Meyers had emailed Aurus Malloy of the Civil Service Commission (Commission) requesting a current job description of the Director of Bureau of Narcotics title, and inquiring which of two Director titles listed on the Commission's website, 05891 or 07762, should be used for Recinos. Although Malloy responded that 07762 was an unclassified position for which the Commission did not have a job title, he provided a

citation to N.J.S.A. 40A:9-119.2 as well as the text of the statute.

The Board explained that, as a result, Meyers' "purported expert" opinion was "not independent," because Meyers "ha[d] a direct conflict of interest as he [was] a fact witness in this matter since he corresponded with the . . . Commission" on Recinos' behalf. Moreover, the Board pointed out that "Recinos did not contact the Division to inquire about the consequences of accepting either position, and thereby did not rely to his detriment on advice or information from the Division." In specifically addressing Recinos' assertion that he and his employer "[had] been transparent in their actions through contact with the State," the Board explained:

> [T]his contact was with the Civil Service Commission. The Board [did] not dispute that Mr. Recinos was hired in accordance with the Civil Service Commission's procedures, nor [did] the Board dispute Mr. Recinos' ability to hold these positions. The issue [was] whether Mr. Recinos [had] to enroll in the PFRS as a result of taking these positions, a question within the authority of the PFRS Board and the Division. At no point did Mr. Recinos or [his employer] contact the Division when Mr. Recinos returned to post-retirement public employment, as required by the March 14, 2011 letter approving Mr. Recinos' retirement.

The Board determined that although the title of Director of Bureau of Narcotics was "not included on the list of PFRS eligible

titles" on the Division's website and "is an unclassified position under the rules of Civil Service," the position was, in fact, "eligible for PFRS enrollment by its[] statutory definition," which "governs the position." Specifically, under N.J.S.A. 40A:9-119.2, the position "requires [ten] years or more as a law enforcement official, three years of which are supervisory, [and] PTC training." Furthermore, "the Legislature determined that the position 'shall have police officer status,[4] as is granted to other sheriff's officers.'"[5]  Moreover, the Director will also

---

[4]  For purposes of PFRS enrollment, a "policeman" is defined under N.J.S.A. 43:16A-1(2)(a) as

> a permanent, full-time employee of a law enforcement unit . . . whose primary duties include the investigation, apprehension or detention of persons suspected or convicted of violating the criminal laws of the State and who . . . is authorized to carry a firearm while engaged in the actual performance of his official duties; . . . has police powers; . . . is required to complete successfully the [applicable] training requirements . . . ; and . . . is subject to the [applicable] physical and mental fitness requirements.

N.J.S.A. 43:16A-3 requires membership in PFRS "as a condition of . . . employment." Under N.J.S.A. 43:16A-1.2(b) and N.J.A.C. 17:4-2.1, the Board determines whether a title meets the requirements and whether the title is eligible for PFRS enrollment when an employer submits a request for a title review.

[5]  Under N.J.S.A. 40A:9-117.13, sheriff's officers are eligible for enrollment in PFRS.

have "supervisory duties over sheriff's officers who themselves are sworn police officers."

Likewise, the Board determined that "for members in PFRS, the position of Undersheriff is eligible for continued PFRS membership." In making that determination, the Board relied on N.J.S.A. 43:16A-3.5, which provides:

> Any member of the [PFRS] of New Jersey who has been or shall be elected to the position of sheriff or who has accepted or shall accept appointment to the office or position of undersheriff may, by written notification to the Director of the Division of Pensions and the county treasurer, elect to continue to be a member of the retirement system while serving as sheriff or undersheriff and shall be deemed to have waived any and all benefits to which he would otherwise be entitled by eligibility for membership in the [PFRS]. The county treasurer shall make deductions from the salary of the sheriff or undersheriff and contributions on his behalf to the [PFRS] as is required by law for members of that system.

According to the Board, because

> Recinos was appointed Undersheriff of Passaic County without any break in service from his position as Director of Bureau of Narcotics, both positions with the same employer, . . . even if he had declined PFRS participation [in his position as Undersheriff], he was ineligible to collect any pension benefit under IRS rules . . . until he [had] a bona fide retirement from Passaic County pursuant to N.J.A.C. 17:1-17.14 (180 day break in service with no pre-arrangement to return).

A-5590-15T3

The Board acknowledged that "Recinos' retirement was bona fide according to N.J.A.C. 17:4-6.2,"[6] "that the required break in service under the regulations in effect at that time [were] observed,"[7] and that his non-PFRS keyboarding clerk position was "not at issue."[8] However, relying on the requirements of N.J.S.A. 43:16A-15.3 and the definition in N.J.S.A. 40A:9-119.2, the Board rejected Recinos' contention that he "substantially complied with the requirements for accepting post-retirement employment without jeopardizing his retirement" in connection with the Director of Bureau of Narcotics and Undersheriff positions. The Board also rejected Recinos' argument that his "service as a Sheriff's Officer [was] substantially different than his pre-retirement job in

_____

[6] N.J.A.C. 17:4-6.2 provides that "[a] member's retirement allowance shall not become due and payable until [thirty] days after the date the Board approved the application for retirement or one month after the date of the retirement, whichever is later."

[7] Recinos' June 1, 2011 retirement was deemed bona fide because he observed the required thirty-day break in service before he was rehired. N.J.A.C. 17:1-17.14, which extended the thirty-day break in service requirement to 180 days before returning to work with the same employer, was promulgated after these events transpired and became effective March 9, 2012. Moreover, because the keyboarding position was not a PFRS-eligible position, no re-enrollment requirement was triggered as a result of Recinos' post-retirement employment in that position.

[8] N.J.S.A. 43:3C-1 prohibits "a former member of any . . . retirement system . . . who has been granted a pension" from enrolling in another retirement system if the former member "becomes employed again in a position which makes him eligible to be a member of" such other retirement system.

Corrections" and should therefore not be subject to reenrollment in PFRS. The Board explained that

> the title of the covered employment is not controlling, and whether a post retirement PFRS position is similar or dissimilar to the prior position is also not controlling. The relevant fact is the position's eligibility for PFRS enrollment whether that position is located in corrections or police work or firefighting, and whether reenrollment is required by the statute. . . . Recinos accepted the position of Director of the Bureau of Narcotics, a law enforcement position that required police training and granted law enforcement powers pursuant to N.J.S.A. 40A:9-119.2. Acceptance of the Undersheriff position is a continuation in PFRS-covered employment, as permitted by N.J.S.A. 43:16A-3.5. He continues in such employment through the present.

This appeal followed.

On appeal, Recinos raises the following points for our consideration:

> POINT I
>
> THE APPELLANT MR. RECINOS WAS NOT REQUIRED TO REENROLL IN THE [PFRS] NOR REQUIRED TO PAY BACK RETIREMENT BENEFITS HE HAS RECEIVED (AND TO MAKE PAYMENTS INTO THE PENSION SYSTEM) SINCE THERE IS INSUFFICIENT CREDIBLE EVIDENCE TO CONCLUDE THAT THE DIRECTOR OF THE BUREAU OF NARCOTICS IS A PFRS POSITION BY THE STATUTORY REQUIREMENTS AND DEFINITION IN N.J.S.A. 40A:9-119.2; NEITHER THE DIRECTOR POSITION (NOR THE UNDERSHERIFF POSITION) EXERCISES "ADMINISTRATIVE OR SUPERVISORY DUTIES OVER POLICEMEN OR FIREMEN;" THE BOARD'S DECISION IS ARBITRARY, CAPRICIOUS, UNREASONABLE, AND INCORRECT; AT THE VERY

12

LEAST, THE MATTER SHOULD BE REMANDED FOR AN EVIDENTIARY HEARING.

POINT II

EQUITY, FUNDAMENTAL FAIRNESS AND DUE PROCESS (ALONG WITH NEW JERSEY STATE SUPREME COURT DECISIONS INCLUDING RUVOLDT V. NOLAN, 63 N.J. 171 (1973) ALONG WITH DECISIONS OF THIS COURT INCLUDING [Knox v. Public Employees' Retirement System, No. A-1444-10T3 (App. Div. Feb. 23, 2012)]) WARRANT A REVERSAL OF THE BOARD'S DECISION AS IT IS ARBITRARY, CAPRICIOUS AND UNREASONABLE; AT THE VERY LEAST, THE MATTER SHOULD BE REMANDED FOR AN EVIDENTIARY HEARING.

POINT III

THE BOARD ERRED IN FINDING AS A FACTOR ITS CONTENTION THAT MR. RECINOS DID NOT CONTACT THE DIVISION.

POINT IV

MR. RECINOS HAS THE REQUISITE BREAKS IN SERVICE WHICH WERE GREATER THAN [THIRTY] AND 180 DAYS AS TO ANY LAW ENFORCEMENT POSITION; THE DECISION OF THE BOARD MUST BE REVERSED.

POINT V

THE ITEM OF FULL POLICE POWERS IS NOT A QUESTION OF PENSIONABILITY AND SHOULD NOT PREVENT MR. RECINOS FROM RECEIVING HIS PENSION WHILE SERVING AS UNDERSHERIFF.

POINT VI

THE DECISION OF THE BOARD MUST BE REVERSED SINCE THE POSITION OF UNDERSHERIFF IS NOT LISTED ON ANY DOCUMENTS ISSUED BY THE PENSION BOARD REGARDING PENSIONABLE POSITIONS.

POINT VII

13                                          A-5590-15T3

THE BOARD COMMITTED REVERSIBLE ERROR BY FINDING THAT THE EXPERT REPORT OF MR. MEYERS "IS ENTITLED TO NO WEIGHT"; AT THE VERY LEAST, THERE MUST BE A REMAND AND EVIDENTIARY HEARING CONSIDERING MR. [MEYERS'] REPORT AND CONCLUSIONS.

POINT VIII

THE RETIREMENT PLAN PROVIDED BY THE STATE OF NEW JERSEY TO POLICE OFFICERS AND FIREFIGHTERS WHO ARE VESTED IN THE PLAN CREATES RIGHTS THAT ARE PROTECTED BY THE UNITED STATES AND NEW JERSEY CONSTITUTIONS (THOUGH RAISED BELOW BY MR. RECINOS . . . THE BOARD DID NOT ADDRESS THIS ISSUE).

POINT IX

THE POSITIONS OF THE DIRECTOR OF THE BUREAU OF NARCOTICS AND UNDERSHERIFF ARE NOT PFRS-ELIGIBLE POSITIONS BECAUSE THE TITLES DO NOT APPEAR ON THE DIVISION'S WEBSITE AS AN ELIGIBLE TITLE; NOR ARE THEY PERMANENT POSITIONS BUT ARE INSTEAD AT-WILL UNCLASSIFIED POSITIONS UNDER THE RULES OF CIVIL SERVICE WHICH PROHIBIT REENROLLMENT OF MR. RECINOS INTO THE [PFRS].

POINT X

THE EVER-CHANGING ILLEGITIMATE THEORIES PRESENTED BY THE DIVISION AND THE BOARD MADE IT IMPOSSIBLE FOR MR. RECINOS TO DEFEND AND PRESENT HIS CASE IN A PROPER MANNER; AT THE VERY LEAST, THE MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING (NOT RAISED BELOW).

POINT XI

THE BOARD ERRED IN DENYING MR. RECINOS' REQUEST FOR AN EVIDENTIARY ADMINISTRATIVE HEARING PARTICULARLY IN LIGHT OF THE CONFUSION

IN THE RECORD SURROUNDING MR. RECINOS' POSITIONS.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Reviewing courts presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). For those reasons, "an appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Application of Virtua-West Jersey Hosp. Vorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

"[T]he test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Review, 152 N.J. 197, 210 (1997) (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App.

A-5590-15T3

Div. 1985)). "Where . . . the determination is founded upon sufficient credible evidence seen from the totality of the record and on that record findings have been made and conclusions reached involving agency expertise, the agency decision should be sustained." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 189 (1980). That said, appellate courts review de novo an agency's interpretation of a statute or case law. Russo, 206 N.J. at 27.

Here, we are satisfied that the Board properly followed the applicable law and its decision was neither arbitrary, capricious, nor unreasonable, but rather supported by substantial evidence in the record. We affirm substantially for the reasons expressed by the Board in its July 12, 2016 final decision. We have considered Recinos' contentions in light of the record and applicable legal principles and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5590-15T3